## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Loftness Specialized Farm
Equipment, Inc.,

              Plaintiff,

v.

Terry Twiestmeyer, Steven
Hood, and Twiestmeyer &
Associates, Inc.,

              Defendants.

Civil No. 11-1506 (DWF/TNL)

**MEMORANDUM
OPINION AND ORDER**

---

Jeremy D. Robb, Esq., Karna A. Berg, Esq., Katie M. Connolly, Esq., and Peter D. Gray, Esq., Nilan Johnson Lewis PA, counsel for Plaintiff.

Aaron A. Myers, Esq., Victoria H. Buter, Esq., and Thomas H. Dahlk, Esq., Kutak Rock LLP, counsel for Defendants.

---

## INTRODUCTION

Plaintiff Loftness Specialized Farm Equipment, Inc. ("Loftness" or "Plaintiff") brought this declaratory judgment action against Defendants Terry Twiestmeyer ("Twiestmeyer"), Steven Hood ("Hood"), and Twiestmeyer & Associates, Inc.'s ("TAI") (collectively, "Defendants"). Defendants brought several counterclaims, including claims for unjust enrichment and the breach of two contracts--a May 2008 Override Agreement and a Non-Disclosure Agreement ("NDA"). Plaintiff previously moved to dismiss Defendants' counterclaims. In an Order dated April 13, 2012, the Court dismissed all counterclaims with the exception of the counterclaims for breaches of the

Override Agreement and NDA. (Doc. No. 36.) Plaintiff then moved for summary judgment on Defendants' remaining counterclaims. In an Order dated October 15, 2012, the Court granted Plaintiff's motion on the two remaining breach-of-contract counterclaims. (Doc. No. 61.) Defendants appealed the Court's grant of summary judgment and the Court's previous dismissal of the unjust enrichment claim. The Eighth Circuit Court of Appeals affirmed the grant of summary judgment on the counterclaim for breach of the Override Agreement and the dismissal of the unjust enrichment claim, and vacated and remanded the Court's order granting summary judgment on the counterclaim for breach of the NDA. (Doc. No. 75; *Loftness Specialized Farm Equip., Inc. v. Twiestmeyer*, 742 F.3d 845 (8th Cir. 2014) ("*Loftness I*").) On remand, the Court granted Plaintiff's motion for summary judgment on the remaining counterclaim for breach of the NDA. Defendants again appealed, and the Eighth Circuit concluded that fact issues exist with respect to the parties' intent on whether the NDA protected information disclosed by TAI for the term of the NDA (twenty (20) years) regardless of whether that information subsequently became publicly available. (Doc. No, 93; *Loftness Specialized Farm Equip., Inc. v. Twiestmeyer*, 818 F.3d 356 (8th Cir. 2016) ("*Loftness II*").)

Presently before the Court are two motions. First, Plaintiff moves for summary judgment on Defendants' sole remaining counterclaim—breach of the NDA. (Doc.

No. 118.)[1]  Second, Plaintiff moves to strike Defendants' damages expert, Zach Eubank. (Doc. No. 121.)  For the reasons discussed below, the Court grants in part and denies in part Plaintiff's motion for summary judgement and denies the motion to strike.

## BACKGROUND

The facts of this case have been thoroughly recited in prior orders and the Court briefly summarizes the facts herein.  Loftness is in the business of manufacturing and selling specialized farm machine equipment, including grain bag loaders ("GBLs") and grain bag unloaders ("GBUs").  Loftness uses independent sales representatives to sell its products.  Twiestmeyer owns TAI, which is in the business of marketing and selling grain bagging equipment.  (Doc. No. 13, Answer ("Ans.") and Counterclaim ("CC"), Ans. ¶ 2.) TAI was an independent sales representative for Loftness.  (CC ¶ 6.)  Hood & Company, Inc., owned by Defendant Steven Hood, was also a sales representative for Loftness.  (*Id.* ¶¶ 2, 7.)

Twiestmeyer and Hood sold grain-bagging equipment manufactured in Argentina, giving them knowledge about the market for grain-bagging equipment and insight into possible improvements that could be made to the Argentine-made equipment.  On May 15, 2007, Twiestmeyer and Hood met with representatives of Loftness to discuss an idea for a grain-bagging product line to sell in the United States—the "Grain Bag Storage

---

[1]      Plaintiff asks the Court to find that the only party with a claim against Plaintiff under the NDA is TAI and seeks to dismiss Twiestmeyer and Hood.  Thus, in essence, the motion is for partial summary judgment as TAI's counterclaim for breach of the NDA will go forward regardless.

System." At the meeting, Loftness and TAI executed the NDA.[2] (Doc. No. 1, Compl. ¶ 8, Ex. A (the "NDA"); Ans. ¶ 8; CC ¶ 10.) The NDA contains the following key provisions and definitions:

> This [NDA] is made between TWIESTMEYER & ASSOCIATES, INC., a Nebraska corporation having offices at 3119 Briarwood Blvd., Grand Island, NE, 68803 (the "Disclosing Party") and LOFTNESS SPECIALIZED FARM EQ, INC. (the "Receiving Party"), having offices at 650 SO. MAIN ST, HECTOR, MN 55342.

(NDA at 1.)

## DEFINITIONS

> 1. Confidential Information. Such information that [TAI] considers to be proprietary and/or confidential, which may include, but is not limited to, prototypes, representative or demonstrative objects, trade secrets, discoveries, ideas, know-how, techniques, designs, specifications, drawings, data, computer programs, business activities and operations, reports, memoranda, studies, and other technical or business information.

> 2. Disclosing Party. For purposes of this Agreement, the Disclosing Party will be the party that is revealing or disseminating information to another party, person or entity.

> 3. Project. Any matter being developed, discussed, worked on, shared or contracted for between the parties to this Agreement.

> 4. Receiving Party. For purposes of this Agreement, the Receiving Party will be the party, person or entity that receives Confidential Information from the disclosing party.

(NDA, Definitions ¶¶ 1-4.)

---

[2]    The NDA was drafted on TAI's behalf by Twiestmeyer's daughter, who is an attorney. (Doc. No. 54 ¶ 2, Ex. 3 (TAI 30(b)(6) Dep.) at 21.) The NDA was executed by TAI and Loftness. (NDA at 3.)

# AGREEMENT

. . . .

      2.  <u>Protection of Confidential Information.</u>  [Loftness] acknowledges that [TAI] claims its Confidential Information as a valuable and unique asset. For itself and on behalf of its officers, directors, agents, employees, and affiliates, [Loftness] agrees that it will keep in confidence all Confidential Information, and that it will not directly or indirectly disclose to any third party or use for its own benefit, or use for any purpose other than the Project, any Confidential Information it receives from [TAI]. [Loftness] agrees to protect the Confidential Information, and agrees that in no event will it use less than the same degree of care to protect the Confidential Information as it would employ with respect to its own information of like importance that it does not desire to have published or disseminated.

. . . .

      11.  <u>Miscellaneous.</u>  This is the only agreement between Disclosing Party and Receiving Party concerning Confidential Information, and it may not be modified, amended or terminated, in whole or in part, except in writing signed by both parties.

(NDA, Agreement ¶¶ 2, 11.) Finally, the NDA states "Duties to Third Parties" without further reference to any such parties or respective duties to them. (*Id.* at 3.) The only other provision in the NDA that uses the term "third parties" is paragraph 4, "No License," which states:

      No license under any trademark, patent, copyright or other right is granted or conveyed by Disclosing Party's transmittal of Confidential Information or other information to Receiving Party under this Agreement, nor shall such transmission constitute any representation, warranty, assurance, guaranty or inducement by the Disclosing Party to the Receiving Party with respect to infringement of patent or other rights of third parties.

(*Id.* ¶ 4.) Finally, the NDA specified a twenty (20) year term. (*Id.* ¶ 8.)

After Loftness signed the NDA, TAI gave Loftness information about the Grain Bag Storage System. Specifically, Defendants allege that Twiestmeyer and Hood shared information about the market for grain bag equipment, the components of the proposed Grain Bag Storage System, and the components of the Grain Bag Storage System that included a GBU with the proposed improvements. Defendants further assert that Loftness had no prior experience manufacturing or marketing grain handling equipment and that Twiestmeyer and Hood presented their past experiences and ideas on how to succeed in developing the Grain Bag Storage System. Ultimately, Loftness decided to manufacture the equipment.

Following the May 2007 meeting, the parties discussed how Twiestmeyer and Hood would be compensated for their role in developing the new product line. Ultimately, the parties entered into the Override Agreement. Pursuant to the Override Agreement, Loftness agreed to pay Twiestmeyer and Hood a two-percent (2%) override of the dealer net price on all grain bagging equipment and related products, except grain bags, sold by Loftness during the term of the agreement. The Override Agreement specified a two year period, but Loftness paid the two-percent override until early 2011, at which time Loftness advised Twiestmeyer and Hood that it intended to stop payments. Twiestmeyer and Hood presented Loftness with a proposed agreement that would provide for a continuation of the override payments, but Loftness declined and advised Twiestmeyer and Hood that it would stop using TAI's trademark and cease the override payments after February 2011.

On June 8, 2011, Loftness brought the present action, seeking a declaration that it had no duty to pay TAI, Twiestmeyer, or Hood under any existing contract or other obligation. Defendants filed an Answer and asserted five counterclaims. The only counterclaim that remains at present is the claim for breach of the NDA. Plaintiff argues that the only party with a claim against it under the NDA is TAI and, accordingly, has moved for summary judgment dismissing Twiestmeyer and Hood as parties.[3]

## DISCUSSION

### I.    Summary Judgment

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996). However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

---

[3]    Loftness originally sought to dismiss Twiestmeyer and Hood from this case via a motion in front of Magistrate Judge Tony N. Leung. Magistrate Judge Leung declined to rule on this issue and instead allowed the parties to move for summary judgment regarding Twiestmeyer and Hood's factual and legal basis to be considered parties or beneficiaries to the NDA. (Doc. No. 113 at ¶ 5(a).)

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. Cnty. of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

Presently, Loftness seeks to dismiss Twiestmeyer and Hood on the grounds that they do not have rights to enforce the NDA because they are not parties, third-party beneficiaries, or assignees to the NDA. Defendants oppose Loftness's motion, arguing that the record shows that Twiestmeyer and Hood were both individually involved in the events surrounding the NDA, each acted as a "Disclosing Party," and each expected to benefit under the NDA.

## A.     Parties to the NDA

Loftness submits that the only parties to the NDA are those specifically named— TAI and Loftness. Defendants, however, argue that Twiestmeyer and Hood meet the definition of "Disclosing Party" under the NDA when considering the "surrounding circumstances." The primary goal of contract interpretation is to determine and enforce the intent of the parties. *Motorsports Racing Plus, Inc. v. Arctic Cat Sales, Inc.*, 666 N.W.2d 320, 323 (Minn. 2003). Where the parties express their intent unambiguously, the words of the contract are to be given their plain and ordinary meaning. *Id.* at 323-24.

Whether a contract is ambiguous is a question of law. *In re SRC Holding Co.*, 545 F.3d 661, 665 (8th Cir. 2008). "A contract is ambiguous if it is susceptible to more than one interpretation based on its language alone." *Hous. & Redev. Auth. of Chisholm v. Norman*, 696 N.W.2d 329, 337 (Minn. 2005).

The initial paragraph of the NDA explicitly states that the NDA is between TAI and Loftness, that TAI is the "Disclosing Party," and that Loftness is the "Receiving Party." (NDA at 1.) Loftness argues that this unambiguous language ends the analysis of who is the "Disclosing Party" because the language of the NDA is not susceptible to more than one construction. Defendants, however, assert that "surrounding circumstances" relating to the NDA are admissible to determine the parties' intent, and that the circumstances here demonstrate that Twiestmeyer and Hood were each a "Disclosing Party." In support, Defendants argue that when the surrounding circumstances are considered, the definition of "Disclosing Party" is broader than just TAI. Those circumstances include, for example, the fact that Twiestmeyer and Hood provided Confidential Information to Loftness and that the parties intended for Twiestmeyer and Hood to be compensated. At a minimum, Defendants assert that resolving any conflict regarding the parties' contractual intent on this point is a fact issue for the jury.

Defendants rely on *In re Soper's Estate*, 264 N.W. 427 (Minn. 1935). In *In re Soper's Estate*, two women claimed the right to the proceeds of a trust instrument, which required the interpretation of the word "wife" in an escrow agreement. *Id.* at 430-31. The court ultimately found, from the "facts and circumstances" that the parties intended

the "wife" to be the woman who believed she was married to the deceased (and the only one known or considered by the contracting parties to be the deceased's wife), despite the fact that the deceased had a "real wife" who he had left years before after faking his own suicide. *Id.* Here, however, the disputed term—"Disclosing Party"—is specifically defined as TAI, which was not the case in *In re Soper's Estate*, where the agreement simply used the word "wife" without naming a specific woman. In addition, it was evident in *In re Soper's Estate* that there was only one intended, albeit unnamed, "wife" at the time the trust agreement was drafted. Here, the NDA specifically names only two parties, TAI and Loftness, and specifically excluded Twiestmeyer and Hood despite their known involvement. For these reasons, the Court finds *In Soper's Estate* to be distinguishable from the case at hand.

The Court determines that the relevant language of the NDA is clear and unambiguous. The NDA explicitly names TAI as the Disclosing Party and Loftness as the Receiving Party. Because there is no ambiguity, the language is given its plain and ordinary meaning and the Court's inquiry ends. The Court also notes that looking at the entirety of the NDA supports this conclusion. There is no reference in the NDA to any person or entity other than TAI as the Disclosing Party. Indeed, the NDA identifies TAI as *the* Disclosing Party. Moreover, the definition of "Disclosing Party" refers "to the party that is revealing or disseminating information" in the singular and does not suggest additional "disclosing parties" entitled to receive benefits under the NDA. The NDA even references *both* parties when discussing a necessary agreement to modify or terminate the NDA. (NDA ¶ 11.) In addition, the NDA was executed by Twiestmeyer,

as TAI's president, and Gloria L. Nelson, as Loftness' president. Neither Twiestmeyer nor Hood is a signatory to the NDA. In sum, the Court concludes that the plain language of the NDA demonstrates that the only Disclosing Party is TAI.

**B.      Third-Party Beneficiaries or Assignees**

Defendants also argue that Twiestmeyer and Hood are intended third-party beneficiaries or assignees under the NDA. Defendants argue that Loftness's corporate representative and the signatory of the NDA understood that Twiestmeyer and Hood would disclose information to Loftness at the time the NDA was executed (Doc. No. 136 ("Dahlk Decl.") ¶ 4, Ex. C ("Loftness 30(b)(6) Dep.") at 27-28; *id*. ¶ 5, Ex D ("Nelson Dep.") at 25), and that Twiestmeyer (on behalf of TAI) intended to confer a benefit on Hood and himself. (*Id*. ¶ 6, Ex. E ("Twiestmeyer Decl.") ¶ 4.) Defendants assert that, under Minnesota law, when it is clear from the language of the agreement and the surrounding circumstances that both TAI and Loftness intended that the obligations agreed to by Loftness under the NDA should extend to Twiestmeyer and Hood, Twiestmeyer and Hood are intended third-party beneficiaries. *See, e.g.*, *Hickman v. SAFECO Ins. Co. of Am.*, 695 N.W.2d 365, 369-70 (Minn. 2005).

Plaintiff disagrees and argues that neither Twiestmeyer nor Hood is an intended beneficiary under the NDA. Specifically, Plaintiff argues that the terms of the NDA do not expressly or by implication show an intent to benefit Twiestmeyer or Hood individually. Plaintiff points out that the NDA does not mention them, the NDA only specifically refers to TAI as the Disclosing Party, and the "Duties to Third Parties" does not identify Twiestmeyer and Hood or any corresponding duties.

Generally, one who is not a party to a contract does not have rights under a contract, but an intended third-party beneficiary may acquire contractual rights. The law distinguishes between intended and unintended beneficiaries: intended beneficiaries have enforceable rights, while incidental beneficiaries do not. *Caldas v. Affordable Granite & Stone, Inc.*, 820 N.W.2d 826, 832 (Minn. 2012). "[A] third party is an intended beneficiary under a contract when it is appropriate to recognize third-party beneficiary rights to effectuate the intent of the parties to the contract, and either the duty owed or the intent-to-benefit test is satisfied." *Id*. at 833. A third party to the contract who does not meet this standard is merely an incidental beneficiary and has no right to enforce the contract. *See id*.

In *Hickman v. SAFECO Inc. Co. of Am.*, 695 N.W.2d 365 (Minn. 2005), the Minnesota Supreme Court explained that Minnesota applies Section 302 of the Restatement (Second) of Contracts in determining beneficiary status. 695 N.W.2d at 369. That section provides:

> (1)    Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either
>
> > (a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary [duty owed test]; or
> >
> > (b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance [intent to benefit test].
>
> (2) An incidental beneficiary is a beneficiary who is not an intended beneficiary.

Restatement (Second) of Contracts § 302. The Restatement refers to two tests: (1) the "duty owed" test; and (2) the "intent to benefit test"—"the contract must express some intent by the parties to benefit the third party through contractual performance[.]" *Cretex Cos., Inc. v. Construction Leaders, Inc.*, 342 N.W.2d 135,138 (Minn. 1984); *see also Hickman*, 695 N.W.2d at 369.

Defendants assert that Twiestmeyer and Hood are intended beneficiaries under the "intent to benefit" test. In particular, Defendants maintain that the surrounding circumstances demonstrate that Twiestmeyer and Hood spent considerable time and money developing Confidential Information disclosed to Loftness in May 2007, and that TAI and Loftness intended to give both Twiestmeyer and Hood the benefit of Loftness' promises. (Twiestmeyer Decl. ¶ 4.) In support, Defendants rely on *Hickman*. In *Hickman*, the Minnesota Supreme Court interpreted an insurance contract that covered property on which Hickman held a mortgage. The Minnesota Supreme Court then considered whether Hickman was a third-party beneficiary under the "intent to benefit" test. The insurance contract recognized a class of "borrowers" that is defined as the mortgagor of an insured location indebted under a mortgage and referred to the "borrower" as an entity other than the party that had entered into the insurance contract and that the "borrower" would obtain benefits. *Id*. at 370. The Minnesota Supreme Court concluded that the provisions of the insurance contract established that Hickman was an intended beneficiary of some of the insurance proceeds. *Id*.

*Hickman* is not directly on point because here there is no reference in the NDA to any person or entity other than TAI as the Disclosing Party and the NDA identifies TAI

as *the* Disclosing Party. The NDA also contains the heading "Duties to Third Parties," but that section is incomplete and does not identify any class of third parties or corresponding duties. However, the NDA also lacks a clause disclaiming third-party beneficiary rights. The Court concludes that looking at the language of the NDA as a whole, the NDA is ambiguous as to the third-party beneficiary status of Twiestmeyer and Hood. Thus, viewing the evidence in the light most favorable to Defendants, including the circumstances surrounding the execution of the NDA, there is a material issue of fact as to whether the parties intended that the obligations agreed to by Loftness under the NDA would extend to Twiestmeyer and Hood and, therefore, whether they are third-party beneficiaries. Thus, summary judgment is denied on this point.[4]

## II.     Motion to Strike Damages Expert

Loftness also moves to strike Defendants' damages expert, Zach Eubank ("Eubank"), from opining that Plaintiff's use of information disclosed under the NDA could have caused TAI as much as $6 million in damages. Loftness argues that Eubank

---

[4]     The Court concludes that there is no evidence suggesting that Twiestmeyer or Hood are assignees to the NDA. An assignment generally "operates to transfer all rights possessed by the assignor and the assignor retains no interest in the right transferred." *Martin ex rel. Hoff v. City of Rochester*, 642 N.W.2d 1, 13 (Minn. 2002). Thus, had TAI assigned its rights to Twiestmeyer and Hood, TAI would have no cause of action against Loftness for breach of the NDA. However, TAI is the party that brought the counterclaim for breach of the NDA against Loftness. Moreover, there is no record evidence of an assignment.

In addition, because the Court has denied summary judgment on the issue of whether Twiestmeyer and Hood are third-party beneficiaries, the Court declines to consider whether TAI could maintain a counterclaim for breach of the NDA for their benefit without joining them as parties.

arrived at his damage calculation using a reasonable royalty measure of damages and that

a reasonable royalty is not an appropriate measure of damages for breach of the NDA.

Defendants oppose the motion and argue that the reasonable royalty measure of damages

is appropriate in the present case.

In general, Federal Rules of Civil Procedure 702 and 703, as well as the teachings

of *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), govern the admissibility

of expert testimony. Before accepting the testimony of an expert witness, the trial court

is charged with the "gatekeeper" function of determining whether an opinion is both

relevant and reliable. *Daubert*, 509 U.S. at 589-90; *Aviva Sports, Inc. v. Fingerhut Direct

Mktg., Inc.*, 829 F. Supp. 2d 802, 820 (D. Minn. 2011). Under Federal Rule of Evidence

702, an expert may testify if: (1) the expert's scientific, technical, or other specialized

knowledge will help the fact-finder to understand the evidence or determine a fact in

issue; (2) the testimony is based on sufficient facts or data; (3) the testimony is the

product of reliable principles and methods; and (4) the expert has reliably applied those

principles and methods to the facts of the case. Fed. R. Evid. 702; *see also Lauzon v.

Senco Prods., Inc*., 270 F.3d 681, 686 (8th Cir. 2001). In addition, Rule 703 reads:

> An expert may base an opinion on facts or data in the case that the expert
> has been made aware or personally observed. If experts in the particular
> field would reasonably rely on those kinds of facts or data in forming an
> opinion on the subject, they need not be admissible for the opinion to be
> admitted. But if the facts or data would otherwise be inadmissible, the
> proponent of the opinion may disclose them to the jury only if their
> probative value in helping the jury evaluate the opinion substantially
> outweighs their prejudicial effect.

The Court also notes that "Rule 702 reflects an attempt to liberalize the rules governing the admission of expert testimony," and it favors admissibility over exclusion. *Lauzon*, 270 F.3d at 686. When examining an expert opinion, a court applies a general rule that "the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination." *Bonner v. ISP Techs., Inc.*, 259 F.3d 924, 929 (8th Cir. 2001) (citation and quotation omitted). "[I]f the expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury," then it must be excluded. *Id.* at 30. In *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999), the Supreme Court concluded that "the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." The proponent of the evidence has the burden of establishing by a preponderance of the evidence that testimony is admissible. *Lauzon*, 270 F.3d at 686.

Here, Plaintiff argues that the use of a reasonable royalty as a measure of damages is inappropriate and would be prejudicial to Loftness because the theory of recovery does not fit the facts of the case. Loftness asserts that Eubank has failed to base his reasonable royalty calculation on the behavior that TAI claims constituted a breach of the NDA. Plaintiff points out Defendants originally asserted the breach of two contracts, the NDA (entered into by TAI and Loftness) and the Override Agreement (entered into by Twiestmeyer, Hood, and Loftness, and which provided payment to Twiestmeyer and Hood). Twiestmeyer and Hood asserted a claim against Loftness for breach of the Override Agreement, claiming that Loftness should have paid them beyond the term in

the Override Agreement. That claim was dismissed by this Court and that dismissal was affirmed by the Eighth Circuit. Plaintiff argues that Eubanks conflates the facts related to the NDA and the Override Agreement to come up with his damages calculation. More specifically, Plaintiff contends that the NDA did not impose a duty on Loftness to make royalty payments to TAI and, instead, that TAI benefited under a separate Sales Representative Agreement and that Twiestmeyer and Hood benefited under the Override Agreement. Plaintiff also argues that TAI cannot seek damages based on a royalty dictated by the separate Override Agreement, but rather that Eubank should have looked solely at the terms of the NDA to calculate damages.[5] In sum, Plaintiff argues that, for the above reasons, Eubank's damages report is irrelevant, will not assist the trier of fact in determining damages, and is highly prejudicial.

Defendants oppose the motion. First, Defendants argue that the reasonable royalty measure of damages is appropriate in assessing damages under the NDA. Second, Defendants assert that Eubank did not consider the NDA and Override Agreement as one contract, but instead that he appropriately considered the 2% royalty in the Override Agreement as one of several data points in determining a reasonable royalty. (Doc. No. 127 ("Berg Aff.") ¶ 2, Ex. 3 ("Eubank Report") at 10.) Finally, Defendants maintain that the law of the case doctrine does not prohibit a claim for damages based on a reasonable royalty.

---

[5] The Court notes that the Override Agreement provided for royalty payments to Twiestmeyer and Hood, but TAI was not a party to that agreement.

Here, the sole remaining claim is whether Loftness breached the non-use provision of the NDA and, specifically, whether Loftness breached the NDA by using Confidential Information for Loftness's own benefit during the twenty-year term of the NDA. TAI asserts that Loftness breached the terms of the NDA when it began selling GBUs and GBLs to Brandt Agricultural Products Ltd. ("Brandt") in 2010, and by doing so, disclosing Confidential Information to Brandt while the NDA was still in effect. (CC ¶ 50.) In *Loftness II*, the Eighth Circuit held that fact issues remained with respect to whether the parties intended for the NDA's protections to last for twenty years or to end when the Confidential Information was no longer confidential. 818 F.3d at 362. In addition, the Eighth Circuit did not find the lack of a payment provision in the NDA dispositive. (*Id*. at 363.) The Eighth Circuit explained:

> [S]o long as Loftness continued to pay TAI, TAI reasonably may have considered Loftness's use of TAI's confidential information as part of the Brandt Industries relationship to be a non-competitive use. Under this view, had Loftness wished to continue to use TAI's confidential information in a potentially competitive manner, Loftness could have continued to enter into ancillary payment agreements with TAI.

(*Id*.)

In his report, Eubank prepared a damage calculation based on a reasonable royalty using the general framework set out in *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970) and which is often used in patent cases. (Eubank Report at 10-21.) A reasonable royalty can be calculated from an established royalty, the infringer's profit projections for infringing sales, or a hypothetical negotiation based on the factors set forth in *Georgia–Pacific*. *See Lucent Techs., Inc. v. Gateway, Inc*., 580

F.3d 1301, 1324 (Fed. Cir. 2009) (patent damages).  The hypothetical negotiation

"attempts to ascertain the royalty upon which the parties would have agreed had they

successfully negotiated an agreement," and "necessarily involves an element of

approximation and uncertainty."  *Lucent*, 580 F.3d at 1324-25 (citation omitted).  As part

of this analysis, Eubank considered multiple factors, including royalty rates received

under the Override Agreement, market rates for similar royalties paid in the applicable

industry, rates paid by Loftness for the use of comparable intellectual property, the nature

and scope of the NDA, the profitability and commercial success of the relevant products,

the utility of the products over old modes or devices, the nature and benefits of the

relevant products, the extent to which Loftness used Confidential Information, anticipated

profit margins, and the portion of the profit credited to Confidential Information.

(Eubank Report at 10-21.)  Based on his analysis, Eubank concluded that a reasonable

royalty rate would range between 2% and 5% of net sales for the use of the confidential

grain bagging information provided by Twiestmeyer, Hood and/or TAI to Loftness.  (*Id*.

at 24.)

The Court concludes that if the evidence bears out and the trier of fact finds that

Loftness breached the NDA and that the parties intended that Defendants be compensated

under the NDA for the use of Confidential Information, then Eubank's reasonable royalty

analysis will be admissible.  While a reasonable royalty analysis is normally used in

patent infringement cases, there is precedent for using the analysis in a case involving the

breach of an NDA.  *See, e.g.*, *Tate v. Scanlan Int'l, Inc.*, 403 N.W.2d 666, 672-74 (Minn.

App. 1987) (affirming a jury verdict applying a reasonable royalty in a case involving a

breach of a nondisclosure agreement). The Court finds that Eubank's reasonable royalty calculation is based on a reliable methodology, is relevant, and will assist the trier of fact. To the extent that Loftness argues that Eubank's opinion results from assumptions that are not based on an understanding of the fundamental facts of the case and a failure to distinguish between facts related to the NDA and the Override Agreement, Loftness can address those concerns via vigorous cross-examination and through the presentation of its own evidence. For these reasons, the Court denies Loftness's motion to strike.

## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that:

1.      Loftness's Motion for Summary Judgment on Defendants' Counterclaim for Breach of the NDA (Doc. No. [118]) is **GRANTED IN PART** and **DENIED IN PART** as follows:

   a.      As a matter of law, neither Twiestmeyer nor Hood is a party or assignee of the NDA. Thus, the Court grants Loftness's motion to the extent that Defendants' counterclaim for breach of the NDA is premised on Twiestmeyer or Hood being a party or assignee.

   b.      Fact issues remain as to whether Twiestmeyer and Hood are third-party beneficiaries to the NDA. Thus, the Court denies Loftness's motion to the extent that Defendants claim that Twiestmeyer and Hood are third-party beneficiaries to the NDA.

2.      Loftness's Motion to Strike Defendants' Damages Expert (Doc. No. [121])

is **DENIED**.

Dated:  August 23, 2017                    s/Donovan W. Frank
                                           DONOVAN W. FRANK
                                           United States District Judge